IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal No.  1:04m948 |
| | ) | |
| MICAELA A. SPENCER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM OPINION

The court has under advisement defendant's motion (docket no. 5) to dismiss both counts of the Criminal Information in this case.  Count I charges her with operating a motor vehicle on a highway while her driving privileges were suspended, on a road on Ft. Belvoir within this court's special maritime and territorial jurisdiction, in violation of 18 U.S.C. § 13 assimilating Va. Code § 46.2-301.  Count II charges her with operating a motor vehicle on a highway, i.e., the same road, without a valid operator's license in violation of 32 C.F.R. § 634.25(f) adopting Va. Code § 46.2-300.  For the reasons set out below, the motion will be granted.

A.    The Motion

The motion raises the issue whether a road within a closed military base, over which the Garrison Commander has complete authority to exclude travelers, is a "highway" within the meaning of Va. Code § 46.2-100.  That statute defines "highway" for purposes of Va. Code §§ 46.2-301 and 46.2-300, and many other Virginia traffic laws, as:

> the entire width between the boundary lines of every way or place *open to the use of the public for purposes of vehicular travel* in the Commonwealth, including the streets and alleys, and, for law-enforcement purposes, the entire width between the boundary lines of all private roads or private streets that have been specifically designated "highways" by an ordinance adopted by the governing body of the county, city, or town in which such private roads or streets are located.

(Emphasis supplied.)  The statutes under which defendant is charged apply only on such a "highway."

Defendant argues that *United States v. Smith*, 395 F.3d 516 (4th Cir. 2005)[1] is controlling, and that the road in issue is not a highway as Va. Code § 46.2-100 is construed in *Smith* and in the Virginia state court opinions relied upon by the Fourth Circuit in *Smith*. The court agrees, and therefore concludes that *Smith* requires dismissal.

B.    The Facts

The relevant facts in the present case are undisputed. Defendant drove her vehicle from Virginia Route 7100 (the Fairfax County Parkway) onto J.J. Kingman Road, which is entirely within the boundaries of Ft. Belvoir,[2] and approached the J.J. Kingman Gate, which protects against unauthorized access to the base at that location. "The military police at the gate requested her driver's license and registration pursuant to their authority to restrict access to the federal enclave. Ms. Spencer produced a valid Virginia identification card but did not have her driver's license. The MPs then confirmed that Ms. Spencer's driver's license had been suspended in the Commonwealth of Virginia and issued her a citation for operating on a suspended license . . . ." Defendant's Memorandum at 2. The government later added the second charge when it filed the Criminal Information.

Ft. Belvoir is a closed military base. The government has long contended, and this court has regularly held, that citizens' Fourth Amendment rights are limited within Ft. Belvoir's boundaries for that reason. Cf. *United States v. Jenkins*, 986 F.2d 76 (4th Cir. 1993).

The Garrison Commander has the authority and discretion to restrict access to Ft. Belvoir, via J.J. Kingman Road or otherwise, in any way he deems necessary or appropriate. For example, he can and does prohibit entry by particular people deemed undesirable. *See* Exhibits D and E to Defendant's Memorandum. He could, if he chose, erect gates or other barriers to entry at the outer boundary of the Ft. Belvoir property, rather than a short distance into the base as is the case with J.J. Kingman Gate and other gates.

---

[1]    Hereafter *"Smith."* Use of *"supra"* is limited in this opinion because of repeated citation to a few decisions.

[2]    This case does not present the issue whether state and federal civilian highways running through closed military bases (such as U.S. Route 1 through Ft. Belvoir) lose their "highway" status on the portion within the base.

Before a motorist reaches the J.J. Kingman Gate, there are no barriers, signs or other impediments to entry onto J.J. Kingman Road from the Fairfax County Parkway.  On the day in question, and for a long time before, the following signs were posted at the entry lane at the gate:

- JJ KINGMAN GATE
  OPEN 7 DAYS A WEEK
  0500-2200
  NON-DECAL VEHICLES MUST REGISTER

- 100% ID CHECK

- AFTER HOURS USE PENCE GATE

The J.J. Kingman Gate is in fact closed between 10:00 p.m. and 5:00 a.m.  The public is barred from passage during those hours, and anyone wishing to enter Ft. Belvoir there during those times must go instead to another gate that is open 24 hours.  No one, driver or passenger, is ever permitted into the base (at J.J. Kingman Gate or elsewhere) without identification that the Garrison Commander considers satisfactory.

The Garrison Commander has not chosen to restrict public access to Ft. Belvoir beyond the level described above.  In the colloquial sense, the base is "open to the public," and anyone with valid identification who is not on the prohibited list may enter an open gate without inquiry as to his or her purpose.  Members of the public do so daily for various personal, commercial, and official purposes, including meetings at various military agencies housed on the base, visits to personnel who live or work on base, fishing on or in the Potomac River and its tributaries which run by or through the base, playing golf at the golf club located there, shopping at the post exchange, etc.

C.     The *Smith* Decision

In *Smith*, the defendant was arrested for driving on a suspended license after driving onto the Central Intelligence Agency compound at Langley, Virginia, and approaching guards at a check point.  The Fourth Circuit Court of Appeals held that "the presence of signs barring public entry [between the entry point and the guard post] establishes that the access road is not open to public use, and thus is not a highway under Virginia law."  395 F.3d at 520.  The court rejected

3

the government's argument that the road was "open to the use of the public for purposes of

vehicular travel" within the meaning of Va. Code § 46.2-100 because the defendant "did not

meet with any interference as he drove down the access road:"

> This fact is not determinative. In *Flinchum v. Commonwealth of Virginia*, the
> Court of Appeals of Virginia concluded that the parking lot of a sporting goods
> store was *not* a highway, without providing any indication that the driver
> encountered interference as he drove into the parking lot. 24 Va. App. 734, 485
> S.E. 2d 630 (1997). The court noted the presence of a "no trespassing" sign and
> held that " 'the premises. . . were open to the public *upon [the owner's] invitation.*
> The invitation was for private business purposes and for his benefit.' " *Id*. at 736-
> 37, 485 S.E. 2d 630 (emphasis added)(quoting *Prillaman v. Commonwealth*, 199
> Va. 401, 407-08, 100 S.E. 2d 4 (1957)). Likewise in this case, the presence of
> signs barring unauthorized admittance is sufficient to establish that the access road
> is not "open to the use of the public for purposes of vehicular travel." Va. Code §
> 46.2-100.

395 F.3d at 521 (emphasis as in the Fourth Circuit opinion).

The court also rejected a government argument that taxis, buses, delivery trucks, and

people in search of directions such as defendant *Smith* also used the road, and that such use

brought it within the definition of "highway." The court said:

> Because the general public is not permitted on the access road, it is not "open to
> the use of the public for purposes of vehicular travel." Va. Code § 46.2-100. *See
> also Flinchum*, 24 Va. App. at 737, 485 S.E. 2d 630 (holding that a road not "open
> to the public at all times" was not a "highway").

*Id.*

D.     The Virginia Cases

There are at least four Virginia Supreme Court opinions and three Virginia Court of

Appeals opinions construing the term "highway" in Va. Code § 46.2-100 in traffic and civil

cases. On the surface they arguably cannot be reconciled. However, upon analysis they fall

(with one exception) into two lines of decisions, one of which was accepted and followed by the

Fourth Circuit in *Smith*. With the exception of the case relied on by the government here, the

Virginia courts have construed "highway' narrowly in traffic cases where convictions and loss of

privileges were in issue, and broadly in civil cases where application of traffic law was relevant

to determining negligence. Briefly, in chronological order, the decisions held as follows.

In 1957, the Virginia Supreme Court decided *Prillaman v. Commonwealth, supra*, the

traffic case that the Fourth Circuit found dispositive through *Flinchum, supra*, the Virginia Court

4

of Appeals decision that had followed it.  In *Prillaman,* the Virginia Supreme Court decided that

a parking lot was not a highway because:

> The true test is whether the "way or place of whatever nature" is open to the use of
> the public for purposes of vehicular travel. . . . [T]he premises [in question]...
> were open to the public upon [the owner's] invitation.  The invitation was for
> private business and for his benefit.  *He had the absolute right at anytime to
> terminate or limit this invitation.  He could close his doors and bar the public or
> any person from vehicular travel on all or any part of his premises at will.  He
> had complete control of their use.*
>
> *This is not the case with regard to a public highway, [which] is a way open to the
> general public without discrimination, distinction or restriction except to regulate
> in order to secure to the general public the maximum benefit therefrom and
> enjoyment thereof.  There must be common enjoyment . . . .  It is the right of travel
> by everyone. . . that establishes a way [as] a public highway.*

100 S.E. 2d at 8-9 (citations omitted, emphasis supplied).

In *Kay Management, Co., Inc. v. Creason,* 220 Va. 820, 263 S.E. 2d 394 (1980), a civil

case, the Virginia Supreme Court held that a roadway on private property in an apartment

complex was a highway as defined in Va. Code § 46.2-100:

> We hold that the evidence of accessibility to the public for free and unrestricted
> use gave rise to a prima facie presumption that the streets of [the apartment
> complex] were highways within the definition of [present Va. Code § 46.2-100].

263 S.E. 2d at 401.  The court cited *Morris v. Dame's, Ex'r.,* 161 Va. 545, 171 S.E. 662 (1933),

which had analogous facts.

In *Furman v. Call*, 234 Va. 437, 362 S.E. 2d 709 (1987), another civil case, the Virginia

Supreme Court held that the parking area of a condominium was a highway for purposes of

applying the rules of the road, distinguishing *Prillaman* and relying on *Kay Management* as

controlling:

> In the present case, the evidence is undisputed that the roads around and in the
> condominium complex have always been open to the public twenty-four hours a
> day, seven days a week.  *Access to the public has never been denied by guards,
> gates or any other device.*  The only signs read: "Private Property, *No Soliciting.*"
> (emphasis added)  Clearly, the purpose of the signs is to prohibit soliciting, not the
> entry of motor vehicles operating by members of the public.

362 S.E. 2d at 711 (emphasis supplied).

In 1993, the Virginia Court of Appeals decided *Coleman v. Commonwealth,* 16 Va. App.

747, 433 S.E. 2d 33 (1993), the traffic case relied on by the government here.  There a Virginia

Court of Appeals panel held that a roadway within the Defense General Supply Center, a federal

enclave in Chesterfield, Virginia was a highway within the meaning of Va. Code § 46.2-100.   As

the Virginia Court of Appeals described the facts:

> The front gate is open and manned twenty-four hours everyday.  Traffic through
> this gate is monitored.  Vehicles bearing registration decals pass freely.  Vehicles
> without decals are generally permitted to pass after the operators state their
> business.  The back gate is open from morning until evening, Monday through
> Friday, and is manned only for the purpose of issuing truck passes.  Other vehicles
> may pass that gate without restriction.  During Operation Desert Storm, access to
> the enclave was limited to people with official business.

433 S.E. 2d at 34.

Citing *Furman* and *Kay Management*, but not *Prillaman*, the Virginia Court of Appeals held that

the road in question was a "highway."  The court said:

> The premises of the Defense General Supply Center are open to the public.
> Access through the rear gate is unlimited when that gate is open.  Access through
> the front gate is subject only to the minimal limitation of checking in and out
> those vehicles that do not display registration decals.  That minimal restriction in
> no way constitutes an appropriation of the property to private use.  The roads are
> maintained by the United States Government for the use of those traveling them
> on government business or simply for the purpose of going on or through the
> enclave.  Nothing in the arrangement justifies denying to those travelers the
> protection of Virginia's public safety highway laws.

433 S.E. 2d at 35.

 In *Flinchum v. Commonwealth, supra*, 24 Va. App. 734, 485 S.E. 2d 630 (1997), and

*Roberts v. Commonwealth*, 28 Va. App. 401, 504 S.E. 2d 890 (1998), both traffic cases, the

Virginia Court of Appeals held that the parking lots in issue in those cases were not highways,

citing *Prillaman*.

E.     Analysis

The Fourth Circuit held in *Smith* that in Virginia the ability to exclude the general public

from a road renders that road less than a "highway" for purposes of a traffic prosecution.  That is

also the holding of those Virginia traffic decisions on which *Smith* relies.  Unless there is a

principled distinction between *Smith* and this case, *Smith* requires dismissal.   There is no such

distinction.  The Garrison Commander possesses and exercises the degree of authority over roads

at Ft. Belvoir that the Fourth Circuit found dispositive in *Smith*.

6

The government argues that *Smith* should be limited to its own facts, and that the greater degree of public access permitted by the Garrison Commander at Ft. Belvoir and the absence of prohibitory signs between the base boundary and the gate distinguish this case adequately from the facts and reasoning of *Smith*.

The court finds no basis in *Smith* for such a narrow reading of its holding.  The Fourth Circuit in *Smith* adopted and reaffirmed the Virginia Supreme Court's construction of "highway" for traffic cases in *Prillaman*, a construction that is not limited to the facts then before the court. The property owner's rights, deemed controlling in *Prillaman*, "at anytime to terminate or limit [his] invitation . . . , close his doors and bar the public or any person from vehicular travel on all or any part of his premises at will. . ., [to exercise] complete control of their use," 100 S.E. 2d at 8-9, are mirrored by the authority of the Garrison Commander at Ft. Belvoir.  Moreover, the Garrison Commander does in fact exercise that authority by excluding individuals deemed undesirable and by closing the J.J. Kingman gate to all traffic every night.

The Garrison Commander's decision whether or where to place signs is irrelevant in the court's view.  The existence and position of signs well before the guard post were deemed *sufficient* in *Smith* to establish that the CIA road was not a "highway."  It does not follow, as the government argues, that such sign placement is *necessary* to remove a road from highway status. On federal property where the *Prillaman* standard applies through the Fourth Circuit's decision in *Smith*, the Garrison Commander's acknowledged authority over the road is sufficient to do that.

The government relies on *Coleman*, the Virginia Court of Appeals decision that stands alone among the traffic decisions from the Virginia courts.  *Coleman*, read alone, would provide persuasive authority for the government's position, and its logic is appealing.  However, the *Coleman* opinion does not even cite *Prillaman*, and is clearly inconsistent with it and with the reading given to *Prillaman* and other Virginia authorities by the Fourth Circuit in *Smith*. (The court also notes that the *Smith* opinion does not cite *Coleman*.)

The court concludes that the Virginia Supreme Court's interpretation of Va. Code § 46.2-100 in *Prillaman*, relied on in *Smith*, requires a finding that the road in question in this case is not

a highway.  The Fourth Circuit's decision in *Smith* therefore requires that the motion to dismiss be granted.

The court recognizes that this reading of Va. Code § 46.2-100 may by implication prevent enforcement on federal property in Virginia of many other Virginia traffic laws that are assimilated by 18 U.S.C. § 13 or adopted by regulations such as 32 C.F.R. § 634.25(f), since with few exceptions their prohibitions are limited to conduct on a "highway."  However, the court's duty is to apply the law as written and as construed by controlling authority.

For these reasons, the court grants the motion to dismiss, and an appropriate order will issue.

_____/s/_____
Thomas Rawles Jones, Jr.
United States Magistrate Judge

Alexandria, Virginia
April 29, 2005

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal No.   1:04m948 |
| | ) | |
| MICAELA A. SPENCER, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

<u>ORDER</u>

For the reasons stated in a Memorandum Opinion filed this date, it is ORDERED that

Defendant's Motion to Dismiss (No. 5) is GRANTED, and the Criminal Information is

DISMISSED.

 

 

_____/s/_____
Thomas Rawles Jones, Jr.
United States Magistrate Judge

 

 

Alexandria, Virginia
April 29, 2005